**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  07-80830-CIV-MIDDLEBROOKS/JOHNSON**

TRANSPORTATION INSURANCE
COMPANY,

       **Plaintiff,**

vs.

THE REGENCY ROOFING
COMPANIES, INC.,

       **Defendant.**

_____/

**ORDER DENYING SUMMARY JUDGMENT**

THIS CAUSE comes before the Court upon the Plaintiff's Motion for Partial Summary

Judgment (DE 24) filed on July 13, 2007.  The Court has reviewed the Motion and is otherwise

fully informed of the premises.  The following facts are undisputed.[1]

In this case, Transportation seeks a declaration of its rights and obligations under certain

insurance policies issued by it to the Regency Roofing Companies ("Regency").[2]  Specifically,

Transportation seeks a declaration that it has no obligation to defend Regency in a case which is

presently pending in the Florida State Courts between the Defendant and an individual named

Rhoads (the "Rhoads Action").  Transportation also seeks money damages representing the

---

[1]  These facts are listed in the Parties Joint Pretrial Stipulation in their statement of
uncontested facts.

[2]  Specifically, there are three primary insurance policies and three umbrella policies which
purport to provide insurance to Regency.  As I have found that material issues of fact exist
precluding entry of summary judgment, it is unnecessary to address each policy separately.
Accordingly, the policies shall simply be referred to as the "Policies."

amount that it has incurred thus far in representing Regency in the Rhoads Action.

The Rhoads Action

In the Rhoads Action, Rhoads, a homeowner, sued Defendant Regency for damages resulting from Regency's installation of a roof on the Rhoads' home.   More specifically, during August of 1999, Regency entered into an agreement with Rhoads for the cedar re-roofing and installation of eleven flat roofs at the Rhoads' residence.  In September of 1999, Rhoads informed Regency that a workman in their home had discovered a leak in the roof over the master bedroom.

Regency employee Vincent Jett ("Jett") responded to Rhoads' complaint then next day and found a small round spot on the ceiling of the master bath indicating water penetration.  Jett's notes reflect that he determined that the "skylight should have been replaced when the job was done."   In October of 1999, Regency received another complaint about leaking water around the skylight at the Rhoads' residence.  In November, Regency replaced the skylight.

In August of 2000, Rhoads once again contacted Regency about problems with their roof and the skylight.  Jet again returned to the Rhoads' residence.  During his visit, he resealed seams around the skylight and the air conditioning duct on the roof, and he noted that the presence of rust indicated a water leak in the air conditioning duct work.  Later that month, the Rhoads contacted Regency again regarding a roof leak.  They did the same in September.  After the September complaint, Jett returned to the Rhoads' residence and observed staining, indicating a leak, rust on the air conditioning duct and flooding (standing water) on the flat roof.

There was an additional complaint made during March of 2001 which resulted in Regency reflashing the roof around the air-conditioning ducts and resealing the skylight on the rear left side of the roof.  In January of 2002, Rhoads sued Regency seeking recovery for damages allegedly

caused by Regency's defective roof work.

<u>The Insurance Policies</u>

Transportation issued three primary insurance policies number B 1031779857 to Regency with policy periods of May 1, 1999 to May 1, 2000 (the "99 P Policy); May 1, 2000 to May 1, 2001 (the "00 P Policy); and May 1, 2001 to May 1, 2002 (the "01 P Policy"), as well as three umbrella policies numbered B 1043043374; C 1043043374; and C 1043043374 spanning the same time periods of May of 1999-2000 (the "99 U Policy); 2000 - 2001 (the "00 U Policy") and 2001 - 2002 (the "01 U Policy"), respectively (collectively referred to as the "Policies"). Transportation, based on the existence of the Policies, has been providing Regency with a defense in the Rhoads Action since its commencement in January of 2002.  On August 2, 2005, Transportation sent Regency a letter regarding its reservation of rights with respect to the Rhoads Action.  Regency received this letter.

Briefly, the Policies provide that Transportation

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.[3]

<u>Legal Standard</u>

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this

---

[3] Each of the Policies differs slightly in the language of their coverage provisions.  For the purposes of this Motion, however, such differences are legally insignificant.

exacting standard.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In applying this

standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in

the light most favorable to the non-moving party.  *See Arrington v. Cobb County*, 139 F.3d 865,

871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

 The non-moving party, however, bears the burden of coming forward with evidence of

each essential element of their claims, such that a reasonable jury could find in their favor.  *See*

*Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  The non-moving party

"[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . .

must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-

movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Further, conclusory,

uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of

fact for trial sufficient to defeat a well supported summary judgment.  *See Earley*, 907 F.2d at

1081.  The failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial and requires the court to grant the motion for

summary judgment.  *See Celotex*, 477 U.S. at 322.

 If the record presents factual issues, the Court must not decide them; it must deny the

motion and proceed to trial.  *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th

Cir. 1981).  Summary judgment may be inappropriate even where the parties agree on the basic

facts, but disagree about the inferences that should be drawn from these facts.  *See Lighting*

*Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).  If

reasonable minds might differ on the inferences arising from undisputed facts, then the Court

should deny summary judgment.  *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)("[T]he dispute about a material fact is genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes*, 398 U.S. at 160.  The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever.  *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th  Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party.  *See Anderson*, 477 U.S. at 255.  It is from this point that we begin our analysis.

<u>Analysis</u>

Transportation asserts that summary judgment is warranted because Regency's claims are not covered by any of the Policies pursuant to various exclusionary provisions.  Specifically, Transportation asserts that Coverage is excluded under the following provisions:

j.    "Property damage" to:

1.    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

2.    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

k.    "Property damage" to "your product" arising out of it or any part of it.

l.    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"

m.   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    1.   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    2.   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

n.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    1.   "Your product";

    2.   "Your work"; or

    3.   "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The Policies also provide the following definitions:

1.   "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

    a.   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.   You have failed to fulfill the terms of a contract or agreement;

    - If such property can be restored to use by:

    a.   The repair, replacement, adjustment or removcal of "your product" or "your work"; or

    b.   Your fulfilling the terms of the contract or agreement.

2.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[4]

3.      "Property damage" means

   a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it . . .

4.      "Your product" means

   a.      Any goods or products other than real property, manufactured, sold, handled, distributed or disposed or by

      (1)      You . . .

5.      "Your product" includes

   a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

6.      "Your work" means

   a.      Work or operations performed by you or on your behalf; and

   b.      Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes

   a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b.      The providing of or failure to provide warnings or instructions.

Additionally, the '00 P Policy contains a pre-existing condition provision which limits its "property damage" coverage to only those situations in which, prior to the policy period, no insured and no employee authorized by the insured to give or receive notice of an "occurrence"

---

[4]  The U Policies refer to "incidents" rather than "occurrence," but then define the word "incident" as an "occurrence" with the same definition just provided.

knew that the "property damage" had occurred, "in whole or in part."  The '01 P Policy contains

a similar provision which further limits "property damage" coverage to only those situations in

which, during the policy period, no "Authorized Insured" knew that the "property damage" had

occurred, in whole or in part; and where such "Authorized Insured" "first knew" that the

"property damage" had occurred.  In other words, to be covered, the Insured must have been

unaware of any property damage prior to the Policy period, and must have first learned of such

damage during the term of the Policy.

Transportation claims that summary judgment is appropriate in this case because: the

exclusionary provisions set forth above prohibit recovery for damages to the Rhoads' roof itself;

the "known injury" provisions of the "00 P and "01 P Policies bars coverage for the Rhoads'

action; and because Regency's counterclaim for bad faith is Premature.

Having reviewed all of the filings, I find that Summary Judgment is not appropriate in this

matter as Transportation has not met its burden of establishing that there are no undisputed issues

of material fact.   It is well established that the purpose of comprehensive liability coverage such

as that provided in the Policies is to "provide protection for personal injury or for property

damage caused by the completed product, but not for the replacement and repair of that product."

*Philip J. LaMarche, et al. v. The Shelby Mut. Ins. Co.,* 390 So. 2d 325 (Fla. 1980).   Regency

does not dispute Transportation's contention that several of the Policies' exclusions bar any

recovery of damages to Regency's roof work or the replacement of the roof.  However, Regency

asserts that the Rhoads' action seeks the recovery of  damages for mold related injuries which

allegedly arose out of Regency's roof installation/repair at the Rhoads' home.  Therefore,

summary judgment premised on the various proposed exclusionary provisions is due to be denied.[5]

Transportation alternatively offers the pre-existing exclusionary provisions of the "00 P and "01 P policies as a bar to Regency's coverage.  Specifically, it asserts that the evidence clearly establishes that Regency knew about Rhoads' claims well before the two Policies effective dates because Regency's employee, Vincent Jett, was repeatedly requested to effect repair work on the roof due to various leaks.  Transportation, however,  has provided no evidence establishing that Regency had any knowledge of the existence of any mold damage to the Rhoads' home allegedly caused by Regency's defective roof repairs at any time prior to August of 2001.  Accordingly, summary judgment premised on the  '00 and '01 P Policies' pre-existing condition exclusion provisions is due to be denied.

Lastly, in addition to seeking summary judgment on its claims, Transportation also seeks summary judgment on Regency's counterclaim for bad faith.  Specifically, Transportation asserts that Regency's bad faith action does not accrue until after it has been established that Regency is entitled to coverage under the policy.  While this is correct, summary judgment is not the appropriate mechanism for resolving this claim.   In this declaratory action, Transportation requests a declaration of its rights and duties under the Policies.  Until such time as a determination of such rights and duties has been made, it is impossible to determine the good or bad faith nature with which Transportation has acted.  Accordingly, it would be improper to grant summary judgment as to this claim.  Accordingly, I find that it is best to hold Regency's bad faith claim in abeyance until the underlying entitlement to coverage dispute is resolved.

---

[5]  Of course, should Regency prevail in this action such costs properly attributable to the roof work itself would be excluded.

One more matter requires brief comment.  In this action Transportation seeks reimbursement of all amounts it has expended in defending Regency in the Rhoads Action.  In its Memorandum in Opposition to Transportation's Motion for Summary Judgment, Regency has claimed that Transportation may not seek to have these costs reimbursed because it has waived its reservation of rights by failing to comply with Fla. Stat. 627.426.  Specifically, Regency asserts that Transportation failed to adhere to Section 627426 when it allegedly provided Regency with written notice of such reservation of rights.  As with Regency's claim for bad faith I  find resolution of this issue premature at this time.  The question of whether Transportation has waived its reservation of rights depends on a determination of whether coverage under the Policies is due.  If it is determined that there is no coverage at all due to Regency under the Policies, then Section 627.426 clearly would not be applicable. *See AIU Ins. Co. v. Glock Marina Investment Inc.,* 544 So. 2d 998 (Fla. 1989).  Accordingly, it is

ORDERED and ADJUDGED that Transportation's Motion for Partial Summary Judgment be, and is hereby, DENIED.

DONE and ORDERED in Chambers, at West Palm Beach, Florida this 2nd day of October, 2007.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE